LAKE GARDA IMPROVEMENT ASSOCIATION ET AL. *v.*
TOWN PLAN AND ZONING COMMISSION OF THE
TOWN OF FARMINGTON ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, JS.

Argued February 5—decided March 12, 1964

*Paul W. Orth,* for the appellants (plaintiffs).

*Palmer S. McGee, Jr.,* for the appellee (named defendant).

MURPHY, J. Upon application of the Lake Garda Company, Inc., the owner of property on the east shore of Lake Garda in Farmington, the defendant town plan and zoning commission changed the zone of ten acres of the applicant's property from R 9, a residential zone, to BR, a restricted business zone, on October 22, 1962. The plaintiffs appealed to the Court of Common Pleas, which sustained the action of the commission. This appeal has been taken from the judgment.

The plaintiffs are two individual owners of near-by property and the Lake Garda Improvement

Association. The improvement association is a specially chartered corporation consisting of the owners of real estate around Lake Garda as defined by a map. See *Lake Garda Improvement Assn.* v. *Lake Garda Co.,* 135 Conn. 240, 241, 63 A.2d 145. It functions in a quasi-municipal capacity and also owns property and maintains for its members certain beaches on the lake near the area in dispute. The defendant commission consists of six members elected from the two districts in the town. The chairman of the commission is Joseph Iskra, who resides at Lake Garda on property which is within the area regulated by the improvement association. Prior to and at the start of the public hearing on the application of the Lake Garda Company, the plaintiffs requested Iskra to disqualify himself from acting as a member of the commission in this matter, but he refused to do so. His refusal was assigned as one of the reasons for invalidating the action of the commission, but the court, after hearing evidence on the question, decided adversely to the plaintiffs' contention.

With such corrections as the plaintiffs are entitled to in the limited finding on the matter of disqualification, the following facts appear: Iskra has resided at Lake Garda for ten years. Prior to April, 1960, he served as president and was the agent for service of process of the Lake Garda Association, a rival of the improvement association. Harry Battistoni was also active in the Lake Garda Association and at times conducted its meetings. Battistoni is the president of the applicant. He and his wife and daughter are the sole owners of its stock. The application was dated May 1, 1962. While it was pending, Iskra purchased a lot adjoining his house from the applicant. He negotiated

the sale with Battistoni, who executed the deed as president of the applicant. The deed is dated August 22, 1962, but it was not recorded until October 10, 1962, two days after the public hearing on the application. Iskra, a member of the improvement association by reason of the location of his property, has refused to pay taxes to that association, and it has been obliged to place a tax lien on his property. He and two other members of the improvement association challenge the legality of its charter and its power to tax and have pending in court an action for a declaratory judgment to determine these questions. *Iskra* v. *Lake Garda Improvement Assn.,* Superior Court, Hartford County, No. 117933. Iskra's attorney in that action is the attorney who represented Battistoni in this matter both at the hearing before the commission and on the appeal. Battistoni's daughter was recognized as surety for Iskra in the declaratory judgment action. During the spring of 1962, prior to the public hearing, Battistoni called a meeting of Lake Garda residents to organize a recreational association. He asked Iskra to attend. Iskra presided over part of the meeting, and a new association was formed. The applicant has on its property a clubhouse which is a nonconforming use. The clubhouse is rented out to various groups and organizations for dinners, picnics, outings and similar activities. Iskra is a beer salesman and sells the beer for these occasions when proper permits are obtained. He is the sole representative of the Lake Garda area on the defendant commission.

Since 1951, when what is now § 8-11 of the General Statutes was originally enacted following *Low* v. *Madison,* 135 Conn. 1, 60 A.2d 774; Cum. Sup. 1955, § 382d; the participation of members of zon-

ing bodies in matters in which the question of their disqualification was raised has been reviewed in *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493, 134 A.2d 250; *Senior* v. *Zoning Commission,* 146 Conn. 531, 153 A.2d 415; *Lage* v. *Zoning Board of Appeals,* 148 Conn. 597, 172 A.2d 911; *Luery* v. *Zoning Board,* 150 Conn. 136, 187 A.2d 247, and *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 191 A.2d 250. In all of these cases, except *Senior,* the criticism of the members of the boards and commissions was held to be justified. Neutrality and impartiality of members are essential to the fair and proper operation of these authorities. Section 8-11 forbids any member of a zoning authority from acting in any matter before the authority if he is directly or indirectly interested in it "in a personal or financial sense."

The record in this case and the transcript of the public hearing recite a history of antagonistic action and litigation between the residents of Lake Garda who have banded together in the improvement association and Battistoni, the dominating figure in the ownership and operation of the applicant. Iskra's legal action against the improvement association and his reiteration in court of his continued opposition to it would in and of itself be sufficient to warrant his disqualification in a matter in which it was vitally interested. When these facts are coupled with the evidence of his friendship and association with Battistoni, and the necessary inferences which must be drawn therefrom, Iskra's insistence in sitting in this matter creates a situation the evil of which § 8-11 and our decisions seek to avoid. See *Zell* v. *Roseland,* 42 N.J. Super. 75, 81, 125 A.2d 890. Iskra's refusal to withdraw from the commission in the present case renders the action of the com-

mission invalid. The trial court's conclusion to the contrary cannot stand.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.