[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Hendel Family Trust, is appealing a decision of defendant, Old Saybrook Zoning Board of Appeals, that denied the plaintiff's application for a variance. This appeal is CT Page 2948 brought pursuant to Connecticut General Statutes 8-8.
The Hendel Family Trust ("plaintiff") brought this appeal naming the Old Saybrook Zoning Board of Appeals ("ZBA") as defendants. Plaintiff is the owner of a gasoline station located at 1090 Boston Post Road, Old Saybrook, Connecticut. The plaintiff desired to relocate a gasoline service island and to construct a canopy over the service island. Because the issue on appeal is a narrow one concerning whether any impropriety or appearance of impropriety took place under 8-11, only a brief discourse of the erratic procedural history of this case is necessary.
On June 5, 1992, the plaintiff filed an "Application for Certificate of Zoning Compliance" for the proposed project with the Zoning Enforcement Officer ("ZEO") of the Town of Old Saybrook. (Return of Record, [ROR], Item 2). A zoning compliance permit was issued by Paul Carey, the ZEO, on June 17, 1992. (ROR, Item 11). On June 29, 1992, a building permit was issued to the plaintiff by the Old Saybrook Zoning Commission to allow construction of the project. (ROR, Item 10). Said permit is signed and dated by Paul E. D'Orio, "Building Official". Thereafter, the plaintiff proceeded with the approved construction.
Plaintiff's brief indicates that at some uncertain date after construction was completed, plaintiff was contacted by the ZEO and told that they would have to file a supplemental application to the Zoning Board of Appeals for a variance for the island and the canopy. (ROR, Item 16, p. 4). Plaintiff's agent, Mr. Lunt, was confused by the request as he had already received approval for the variance from the zoning commission, however, he complied by filing an application with the ZBA. (ROR, Item 16). An application for a variance is in the return of record, however the application is not dated. (ROR, Item 3). On July 7, 1992, a stop work order was hand delivered to the plaintiff by Paul D'Orio. (ROR, Item 11).
A hearing was held on the plaintiff's application to the ZBA on July 29, 1992. (ROR, Item 16). Mr. Lunt, plaintiff's agent, spoke in favor of the application. Mr. Jensen, a Town of Old Saybrook Zoning Commission member, and Ken and Chuck Adelman, owners of two gas stations on the same street as the one owned by plaintiff, spoke in opposition to the granting of the variance (ROR, Item 16). By decision dated July 30, 1992, the ZBA denied plaintiff's application as to the canopy and granted plaintiff's CT Page 2949 application as to the relocation of the island. (ROR, Item 17).
A. Aggrievement:
Aggrievement is prerequisite to maintaining an appeal. General Statutes 8-8(a)1; Huck v. Inland Wetlands and Watercourses Agency, 203 Conn. 525, 530-31, 525 A.2d 940 (1987). From evidence presented at the hearing held on January 18, 1994, this court finds that the plaintiff is a party aggrieved by the decision of the ZBA.
B. Timeliness:
A party aggrieved by a decision or action made by a zoning board of appeals may appeal that decision or action within fifteen days after publication of such decision or action. General Statutes 8-8(b). Notice of the ZBA's decision was published in the Middletown Press on August 6, 1992. (ROR, Item 17). The appeal was served on the ZBA on August 13, 1992. It is found that the present appeal was brought in accordance with the timeliness provisions of 8-8(a).
C. Standard and Scope of Review:
The court may grant relief on appeal only where the local authority has acted illegally, arbitrarily, or in abuse of its discretion. Frito-Lay, Inc. v. Planning and Zoning Commission,206 Conn. 554, 573, 538 A.2d 1039 (1988). Plaintiff alleges that the ZBA acted illegally and in abuse of discretion in denying the application for a variance due to Mr. Jensen's appearance before the board in representative capacity for plaintiff's competitors in violation of General Statutes 8-11.
Titled "Disqualification of members of zoning authorities",8-11 states in relevant part:
 No member of any zoning commission . . . exercising the powers of any zoning commission . . . shall appear for or represent any person, firm, corporation or other entity in any matter pending before the planning or zoning commission . . . whether or not he is a member of the board or commission hearing such matter. No member of any zoning commission . . . shall participate in the hearing or decision of the board of commission of which he is directly or indirectly interested in CT Page 2950 a personal or financial sense . . .
General Statutes 8-11.
Plaintiff argues that Mr. Jensen's statements, relationships and conduct, coupled with his activities before and during the ZBA hearing, are such that he should be considered to have appeared for or represented the Adelmans of their interests in opposition to the plaintiff's application before the ZBA.
A deposition taken of Mr. Jenson after the hearing before the ZBA revealed the following:
— Jenson voted against the granting or a variance for the canopy at the vote before the Zoning Commission of which he is a member. (Deposition [Dep.], 14).
— Jenson had never before in his eight years of the Zoning Commission appeared before the ZBA to speak on a matter that had previously been heard before the Zoning Commission. (Dep. 15).
— Jenson has been acquainted with the Adelmans since approximately 1975 as a daily customer at their gas station(s). (Dep. 17).
— The Adelmans have "extensively bent [Jenson's] ear' about being denied a permit to build a canopy at one of their own gas stations and about their general disapproval of the activities and policies of the ZBA. (Dep. 18).
— The Adelmans raise the issue of the ZBA with Jenson because they know he is a member of the Zoning Commission and Jenson tells the Adelmans that he "just [does not] want to hear it." (Dep. 18 — 19).
— Jenson and the Adelman's sat together at the hearing before the ZBA and engaged in general discussion about how the plaintiff should not be allowed any encroachment of the setback requirements because the Adelmans were denied a similar request when they applied to the ZBA. (Dep. 20).
— Jenson had previously expressed to the Adelmans his Zoning Commission vote against the granting of a permit to plaintiff for a canopy but that the issue was one more appropriately before the ZBA and that he (Jenson) told the Adelmans that he was not CT Page 2951 going to get involved. (Dep. 21).
— The discussions between the Adelmans and Jenson were in regard to the irregular procedure that the plaintiff was going through to get the variance as opposed to the procedure that the Adelmans had been through when they applied for their canopy. (Dep. 22).
— Jenson was moved to speak before the ZBA because he did not feel that the plaintiff has presented sufficient evidence of hardship. (Dep. 23).
— Jenson sat with the Adelmans and spoke to the ZBA in opposition to plaintiff's variance application both before and after the Adelmans addressed the ZBA. (Dep. 24).
— After the Adelmans arrived for the ZBA hearing, Jenson and the Adelmans generally discussed that the Hendel issue was to be heard and the issues that needed to be addressed. (Dep. 26).
— Jenson, in his capacity as a Zoning Commission member, made favorable comments about the Adelman's gas station to the ZBA in opposition to the plaintiff's application before the board. Jenson also criticized the Zoning Commission's decision in regard to plaintiff's application. (Dep. 29-30).
In support of their argument that Mr. Jenson's appearance before the ZBA was in a representative capacity for plaintiff's competitors, plaintiff relies on Ferguson v. Zoning Board of Appeals, 29 Conn. Sup. 31 (C.P. 1970). In Ferguson, the plaintiffs received a permit to construct an addition onto their home. When the work was 75% completed the permit was revoked by a cease and desist order on the grounds that the addition did not comply with the set back requirements. The plaintiffs then applied for and were granted a variance by the ZBA. Two parties spoke before the ZBA in opposition to the granting of plaintiff's application for a variance. The first were neighbors to plaintiff, and the second was the chairman of the Zoning Commission. The neighbors, who were strongly opposed to the granting of the variance, had contacted the chairman on a number of occasions concerning their opposition. The neighbor's father was a former member of the zoning commission and a friend of the chairman's and had phoned the chairman about the application. The cease and desist order was issued over the chairman's signature. The neighbor's lawyer was a member of a law firm that had counseled CT Page 2952 the chairman previously. When the neighbor's lawyer visited the zoning commission office for information prior to the hearing, the chairman showed him records and talked to the lawyer about the variance application. The chairman did not offer his opinion as to the merits. The chairman attended the hearing and gave information to the ZBA from the zoning commission's records. The chairman also gave his opinion to the ZBA as to how the alleged violation should be classified. The chairman had only appeared before the ZBA on two or three different occasions, including the one involving plaintiffs.
In concluding that the chairman had appeared before the ZBA in a representative capacity for the nieghbors [neighbors] opposing the plaintiff's variance in violation of 8-11, the court stated: "[i]n . . . the instant case, the official involved made plain, by either [his] ruling or [his] testimony, [his] interest, preference or favoritism toward one of the litigants, in advance of their appearance or involvement with a different municipal agency which held final powers of decision over the same problem." Id., 40.
 The prohibition of 8-11 applies whether the official was a member of the board hearing the matter or . . . whether he appeared before the board as a witness . . . by reason of a substantial personal interest in the victory of one of the parties . . . . a personal interest in either an interest in the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility towards the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess.
Id., 38.
The court in Ferguson found that the chairman's personal interest in the opposing party in addition to his participation in a prior action concerning the same subject matter before the Zoning Commission, were substantial factors in the chairman's decision to appear as a witness in opposition to the plaintiffs before the ZBA. "In a real and legal sense, this constituted an appearance or representation within the prohibition of 8-11." Id., 39. Further, the chairman's "official status on the commission, CT Page 2953 coupled with his participation in its decision, and his personal contacts and associations with plaintiffs' opponents made his appearance before the [zoning] board [of appeals] a violation of 89-11.: Id., 41.
In the present appeal, plaintiff argues that Mr. Jenson's position as a zoning commission member, his long standing relationship with the opponents to plaintiff's application for a variance and his articulated opposition to the granting of plaintiff's variance before the ZBA qualifies Mr. Jenson as having appeared for or represented the opponents in violation of8-11.
The defendant ZBA argues that Mr. Jenson' initial vote to deny plaintiff's a variance when the issue was before the zoning commission serves to show that Jenson was opposed to the granting of this variance even before the ZBA hearing. In addition, defendant argues that there is no indication that the Adelmans enlisted Mr. Jenson's help in their efforts to oppose plaintiff's application, and in fact, Jenson stated in his deposition that after the zoning commission vote and before the ZBA hearing, he only spoke to the Adelmans once concerning the plaintiff's project. Defendant also points out that Mr. Jenson did not attend the ZBA hearing with the sole purpose being to observe the issues concerning plaintiff's application, but rather attended the hearing primarily to observe another unrelated matter.
 The evil lies not in influence improperly exercised but rather in the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights with the property owner must feel assured will always exist in the exercise of zoning power. . . . Whatever the facts might disclose in each case, the basic judicial obligation is clear . . . courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption of favoritism . . . . The decision as to whether the interest involved is enough to disqualify the official and to invalidate the board's action is a factual one and depends on the circumstances of the particular case. (Internal citations omitted).
Id., 39. See Brunswick v. Inland Wetlands Commission, 29 Conn. App. 634,617 A.2d 466 (1992). CT Page 2954
Mr. Jenson's official status on the zoning commission and his participation in its decision regarding plaintiff's application combined with his association with the plaintiff's opponents made his appearance before the board a violation of8-11. The ZBA's denial of plaintiff's variance was therefore illegal and invalid. This decision shall not be considered as a determination by the court that the plaintiff's request for a variance be granted, but only that the ZBA's action in denying the plaintiff's variance is illegal and invalid. The plaintiff's appeal is sustained.
O'KEEFE, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 2966